**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| HERMAN SNIDER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION No. 9:08CV234 |
| v. | § | |
| | § | |
| NOMAC DRILLING LLC; NOMAC | § | JUDGE RON CLARK |
| DRILLING CORPORATION; INDUSTRIAL | § | |
| LIFT TRUCK & EQUIPMENT, INC.; and | § | |
| CHESAPEAKE OPERATING, INC., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## ORDER GRANTING DEFENDANT CHESAPEAKE OPERATING, INC.'S MOTION FOR SUMMARY JUDGMENT

Before the court is the motion for summary judgment of Defendant Chesapeake Operating, Inc. ("Chesapeake") [Doc. #49]. The court finds that Plaintiff's claims against Chesapeake are barred by the statute of limitations, and alternatively finds that Plaintiff has not met his burden of showing a genuine issue of fact regarding whether Chesapeake had actual knowledge of the alleged dangerous condition of the forklift as required by Chapter 95 of the Texas Civil Practice and Remedies Code, which applies to Plaintiff's claims, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001-.004 (Vernon 2005). The court therefore grants Chesapeake's motion for summary judgment.

1

## I. Background

Plaintiff Snider alleges that he has suffered injuries from a forklift accident that occurred at a well site in Weches, Texas on January 4, 2007. [*See* Doc. #33-3, Pl.'s First Am. Compl. at 2.] Snider filed this case in state court against Defendants NOMAC Drilling LLC and Nomac Drilling Corporation (collectively "Nomac Defendants"), and Defendant Industrial Lift Truck & Equipment, Inc. ("Industrial Lift") on December 8, 2008. [*See* Doc. #1-6, Pl.'s Original Pet. at 5.] The case was removed to federal court on December 18, 2008. [*See* Doc. #1, Notice of Removal.] On August 28, 2009, Plaintiff moved for leave to amend his complaint to add Defendant Chesapeake, who is the parent corporation of the Nomac Defendants [*see* Doc. #33, Mot. for Leave to File First Am. Compl.], and that motion was later granted [*see* Doc. #41, Order Granting Leave].

## II. Summary Judgment Standard of Review

A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a), (b). A summary judgment motion should be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only a genuine dispute over a material fact—a fact that might affect the outcome of the suit under the governing substantive law—will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment under Rule 56 has the burden of demonstrating that no material fact issue exists. *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514. If Defendant Chesapeake meets this burden, then Plaintiff Snider, as the nonmoving party, must bring forth

affirmative evidence in order to defeat the summary judgment motion. *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. Snider "may not rely merely on [the] allegations or denials" of the pleadings, but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Further, as the nonmoving party, Snider "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

Rule 56 requires the court to consider "the pleadings, the discovery and disclosure materials on file, and any affidavits." Fed. R. Civ. P. 56(c). The court must view all facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Statute of Limitations

In Texas, personal injury actions are governed by a two-year statute of limitations.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2009). Further, in personal injury actions, a cause of action generally accrues "when the wrongful act effects an injury." *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977). It is undisputed in this case that Plaintiff's injuries occurred on January 4, 2007, and that as a result, Plaintiff had until January 4, 2009 to bring his claims against Chesapeake. [*See* Doc. #50, Pl.'s Opp'n to Def. Chesapeake's Mot. for Summ. J.

---

[1] The court has jurisdiction over this case based on diversity of citizenship pursuant to 28 U.S.C. § 1332. [*See* Notice of Removal at 2-3; Pl.'s First Am. Compl. at 1-2.] In diversity cases, the court applies federal procedural and evidentiary rules, and applies the substantive laws of the forum state. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 1141 (1965); *Huss v. Gayden*, 571 F.3d 442, 449 (5th Cir. 2009).

("Pl.'s Opp'n") at 8; Doc. #49, Def. Chesapeake's Mot. for Summ. J. at 10-11.] Plaintiff's request for leave to amend his complaint to add Chesapeake as a defendant was not filed until August 28, 2009. [*See* Mot. for Leave to File First Am. Compl.]

Plaintiff argues that: (1) his claims against Chesapeake are not time-barred because, pursuant to Federal Rule of Civil Procedure 15(c), his amended complaint relates back to the date of his original complaint; and (2) his claims should be equitably tolled because the Nomac Defendants concealed or failed to provide information pertaining to Chesapeake's role or involvement in the events on which this lawsuit is based.

**A. Relation Back**

Rule 15 provides that an amendment to a pleading that adds a party against whom a claim is asserted relates back to the date of the original pleading if: (1) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading; and (2) within the time period provided by Rule 4(m), ordinarily 120 days following the filing of the complaint, the party added by the amendment (a) received notice of the amendment such that it will not be prejudiced in defending on the merits, and (b) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C); *see also* Fed. R. Civ. P. 4(m).

Plaintiff has not shown that Chesapeake knew or should have known that it would have been a party but for a mistake concerning the proper party's identity. Snider asserts that his failure to name Chesapeake in his original complaint was a misnomer, because he sued the Nomac Defendants "as the property owner, as the lessor of the forklift, and as the entity responsible for drilling," and then later discovered that in fact Chesapeake was the property

4

owner and the lessor or the forklift. [Pl.'s Opp'n at 8-9.] However, this is not a case where Plaintiff was simply confused by similar names, or sued the proper defendant using the wrong name. The Nomac Defendants and Chesapeake are separate legal entities with dissimilar names, a fact of which Plaintiff became aware in February 2009, well within 120 days of the filing of his original complaint in December 2008. [*see* Doc. #12, Corporate Disclosure Statement at 1 (disclosing, on February 5, 2009, that Nomac Defendants are owned by Chesapeake)]. Plaintiff has pointed to nothing beyond the fact that the Nomac Defendants and Chesapeake are related corporate entities to show that Chesapeake had notice of the amendment prior to Plaintiff's request for leave to amend on August 28, 2009, which was well beyond 120 days from the filing of his original complaint.

Further, Plaintiff's original complaint did not assert any claims against the "property owner" of the well site; it merely asserted claims against the owner and lessor of the forklift that allegedly malfunctioned and caused Plaintiff's injury. [*See* Pl.'s Original Pet. at 2-3.] Chesapeake was the lessor of the forklift; however, Plaintiff has not asserted a theory of liability that would hold Chesapeake liable or impose a duty upon it merely for renting the forklift. Even if, as Plaintiff asserts, Chesapeake can be charged with notice of the lawsuit due to its corporate relationship with the Nomac Defendants, that fact would not dictate an inference that Chesapeake "should have known" Plaintiff intended to bring suit against Chesapeake in addition to the Nomac Defendants. Therefore, Plaintiff's claims against Chesapeake do not relate back to his original complaint.

**B. Tolling**

Where a party affirmatively conceals its identity as the responsible party, that party can be estopped from claiming limitations as an affirmative defense under the doctrine of fraudulent concealment. *See Dougherty v. Gifford*, 826 S.W.2d 668, 673-74 (Tex. App.—Texarkana 1992, no writ); *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1500 (2d ed. 1990) (recognizing that, in context of relation back under Rule 15(c), "[i]f the originally named defendant or the party sought to be added either knowingly allows plaintiff to think he has sued the proper party or actually misleads him as to the identity of the party that should be held responsible, the new defendant will be estopped from asserting a statute of limitations defense"). The court has previously found, in its order granting Plaintiff leave to amend his complaint, that "Plaintiff had timely and adequate notice of the relationship between Nomac and Chesapeake," and that "any allegations of bad faith on the part of Nomac in supplying this information are spurious and unfounded." [Order Granting Leave at 1; *see also* Corporate Disclosure Statement at 1 (disclosing, on February 5, 2009, that Nomac Defendants are owned by Chesapeake).] Further, Plaintiff has pointed to no acts of concealment performed by Chesapeake itself. *See Dougherty*, 826 S.W.2d at 676 (acts of third parties generally will not support fraudulent concealment). Therefore, the doctrine of fraudulent concealment does not operate to estop Chesapeake from asserting a limitations defense in this case.

Since Plaintiff's amended complaint was filed outside of the limitations period and does not relate back to his original complaint, and since Chesapeake is not estopped from asserting a statute of limitations defense, Plaintiff's claims against Chesapeake are time-barred.

## IV. Texas Civil Practice and Remedies Code Chapter 95

Assuming for the sake of argument that Plaintiff's claims are not time-barred, he has not shown that there is a genuine issue of material fact as to elements for which he bears the burden of proof under Chapter 95 of the Texas Civil Practice and Remedies Code. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995) ("For any matter on which the non-movant [Plaintiff Snider] would bear the burden of proof at trial . . . the movant [Chesapeake] may merely point to the absence of evidence and thereby shift to [Plaintiff] the burden of demonstrating . . . that there is an issue of material fact . . . .").

### A. Applicability of Chapter 95

Chapter 95 of the Texas Civil Practice and Remedies Code applies to claims that: (1) are "against a property owner . . . for personal injury . . . to . . . a contractor, or a subcontractor or an employee of a contractor or subcontractor"; and (2) "arise[] from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." Tex. Civ. Prac. & Rem. Code Ann. § 95.002 (Vernon 2005). A "claim" means a claim for damages caused by negligence. *Id.* § 95.001(1). Plaintiff's claims in this case are for damages caused by negligence. [*See* Pl.'s First Am. Compl. at 2-3.]

*1. Plaintiff's Claims Against Chesapeake are Against a Property Owner for Personal Injury to an Employee of a Contractor or Subcontractor*

A "property owner" means "a person or entity that owns real property primarily used for commercial or business purposes." Tex. Civ. Prac. & Rem. Code Ann. § 95.001(3). A person or entity who owns a mineral lease, such as an oil and gas lease, is considered to be an owner of real property, because a mineral lease conveys a fee simple determinable interest in real property. *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 84 (Tex. App.—Houston [1st

Dist.] 2003, no pet.) (citing *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1992)). Chesapeake was the owner of the oil and gas lease at the well site in Weches where Plaintiff's injuries occurred.² [*See* Doc. #49 Ex. M, Decl. of Charles C. Smith ("Smith Decl.") at 1.] Further, Chesapeake used its mineral lease for commercial and business purposes, i.e. to produce oil and gas. [*See* Smith Decl. at 1; Doc. #49 Ex. E, Dep. of Robert Palmer, Jr. ("Palmer Dep.") at 9.] Therefore, Chesapeake was a "property owner" for purposes of Chapter 95.

Further, Plaintiff's claims against Chesapeake are for personal injury to an employee of a contractor or subcontractor. His claims are for personal injury. [*See* Pl.'s First Am. Compl. at 2-3.] Plaintiff was an employee of Surface Rental Equipment Services, Inc. ("Surface Rental"). [*See* Pl.'s First Am. Compl. at 2.] Surface Rental supplied a "reserve pit pump" to Chesapeake. [*See* Doc. #49 Ex. N, Invoice #218.] Therefore, Plaintiff was "an employee of a contractor or subcontractor" to Chesapeake.

2. *Plaintiff's Claims Arise from the Condition or Use of an Improvement to Real Property Where the Contractor or Subcontractor Repairs or Modifies the Improvement*

An oil and gas well constitutes and "improvement to real property" for purposes of Chapter 95. *Francis*, 130 S.W.3d at 85 (citing *Fox. v. Thoreson*, 398 S.W.2d 88, 89 (Tex. 1966)). It is undisputed that Plaintiff went to Chesapeake's well site to repair, remove, and/or replace the reserve pit pump that had been supplied to Chesapeake by Plaintiff's employer. [*See* Doc. #49 Ex. J, Dep. of Herman Snider ("Snider Dep.") at 29-30.] A reserve pit pump is a necessary

---

² The owner of the oil and gas lease was Chesapeake Exploration Limited Partnership ("CELP"). [Smith Decl. at 1.] Defendant Chesapeake was CELP's authorized agent. [Smith Decl. at 1.] Chapter 95 applies both to property owners and also to their agents who oversee their properties. *See Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 202-03 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

8

component of an oil and gas well that facilitates the drilling by assisting in the removal of drilling mud, chemicals, and/or sludge during drilling. [Smith Decl. at 1-2.] Thus, Plaintiff went to Chesapeake's well site to repair an improvement to real property, the oil and gas well. *See Moreno v. BP Am. Prod. Co.*, 2008 WL 4172248, at *2 (Tex. App.—San Antonio Sept. 10, 2008, pet. denied) (plaintiff was injured while installing pipe at a well site; court found he was engaged in construction of an improvement to real property, i.e. the oil and gas well).

Further, Chapter 95 does not require that the defective condition, in this case the allegedly defective forklift, be the object of the contractor or subcontractor's work. *Fisher*, 16 S.W.3d at 201. For instance, Chapter 95 applies when an employee is injured by a tool used for construction or modification of the improvement to real property. *See id.* at 201-02 (Chapter 95 applied where plaintiff was injured by unsafe ladder while performing repair of air conditioning units); *see also Spears v. Crown Cent. Petroleum Corp.*, 133 Fed. Appx. 129, 131 (5th Cir. 2005) (Chapter 95 applicable where plaintiff was injured when he tripped over hoses while leaving work site where he had been working on a heat exchanger). Therefore, Plaintiff's claims arise from the condition or use of an improvement to real property.

**B. Application of Chapter 95**

Chapter 95 provides that

> A property owner is not liable for personal injury . . . to . . . an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury . . . arising from the failure to provide a safe workplace unless:
>
> > (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury . . . and failed to adequately warn.

Tex. Civ. Prac. & Rem. Code Ann. § 95.003. Plaintiff has the burden to prove that Chesapeake controlled Plaintiff's work and had actual knowledge of the dangerous condition. *See Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

Plaintiff has not shown that there is a genuine issue of fact as to whether Chesapeake had actual knowledge of the allegedly dangerous condition of the forklift. Section 95.003(2) requires a plaintiff to show that the property owner had *actual* knowledge of the dangerous condition, not merely constructive knowledge; a showing of "negligent ignorance" is insufficient. *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 134-35 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Plaintiff alleges that after the accident, several workers on the job site came over to the scene and informed him that they had been aware of the forklift's dangerous condition. [Pl.'s Opp'n at 12.] Plaintiff then relies on a statement by Robert Palmer, the Nomac Defendants' corporate representative, that in general, if the rig hands noticed something wrong with a piece of equipment, they would say something to the "company man." [*See* Palmer Dep. at 20-21.] The "company man" in this case was Jeff Parker, who was a consultant hired by Chesapeake to oversee operations at the well site. [*See* Palmer Dep. at 15-16; Doc. #49 Ex. O, Master Service Contract.] The parties dispute whether any knowledge by Parker should be imputed to Chesapeake or whether Parker was merely an independent contractor. *See Francis*, 130 S.W.3d at 90 (noting that "the term 'company man' does not refer definitively to either an employee or an independent contractor").

However, even if any knowledge by Parker could be imputed to Chesapeake, Plaintiff has not shown that there is a genuine issue of fact as to whether Parker had *actual* knowledge of the alleged dangerous condition of the forklift. Plaintiff has presented no evidence that a Nomac employee or any other worker at the job site actually told Parker that something was wrong with the forklift prior to Plaintiff's accident. The fact that workers would generally have informed Parker if they noticed something wrong with a piece of equipment, or Plaintiff's assertion that, as the supervisor on site, Parker "must have been aware that there was a problem with the forklift" [*see* Pl.'s Opp'n at 13], are not enough to present a genuine fact issue as to Parker's knowledge. *See Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). Therefore, Snider has not met his summary judgment burden as to the "actual knowledge" element of Section 95.003.

## V. Conclusion

For the foregoing reasons, Defendant Chesapeake Operating, Inc.'s Traditional and No Evidence Motion for Final Summary Judgment [Doc. #49] is hereby **GRANTED**.

So **ORDERED** and **SIGNED** this **13** day of **January, 2010.**

     _____
     Ron Clark, United States District Judge